788 So.2d 252 (2000)
Nelly GLANZBERG, Appellant,
v.
Fred H. KAUFFMAN, Iris H. Kauffman, and P.A. Lethbridge & Co., Appellees.
No. 4D98-4420.
District Court of Appeal of Florida, Fourth District.
August 2, 2000.
Rehearing Denied December 1, 2000.
*253 Dan Cytryn of the Law Offices of Dan Cytryn, P.A., Tamarac, for appellant.
Kimberly L. Boldt and Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami, and Green & Ackerman, P.A., Fort Lauderdale, for appellees.
GUNTHER, J.
Appellant Nelly Glanzberg sued the appellees for injuries she sustained when she fell on a step outside the Kauffman's home during a real estate open house. The jury found no liability for the appellees, and Glanzberg appeals. During the pendency of this appeal, Glanzberg's claim against Appellee P.A. Lethbridge & Co., the Kauffmans' real estate agency, was settled and the appeal as to them voluntarily dismissed. As to her claim against the Kauffmans, she argues that the trial court erred in failing to excuse a juror for cause and in excluding evidence of subsequent similar incidents and repairs. We find no abuse of discretion with regard to the juror issue and affirm that issue without comment. The trial court did, however, abuse its discretion in excluding evidence of subsequent similar incidents. For that reason, we reverse and remand for a new trial against the Kauffmans only. Although we also determine that the trial court did not abuse its discretion in excluding evidence of subsequent remedial measures, we briefly discuss that issue to aid the trial court on remand.
At trial, the evidence established that Glanzberg had accompanied her daughter, a real estate agent, to an open house at the Kauffman residence. When she exited the front door to leave, she fell down the front steps and broke her hip. The steps outside the Kauffman residence were covered with chattahoochee coating, which consists of yellowish-beige, pebble-sized river rock. Glanzberg testified that the chattahoochee steps were difficult to see.
A state certified building contractor, who testified by deposition as Glanzberg's expert witness, testified that the steps had "construction defects" and "noncompliant code issues." The defects, according to the expert, were that the steps were not of uniform heights and depths, so that they confused the body's gait when walking and made it "highly likely that eventually someone would fall ... particularly someone that was not familiar with it." The expert called the steps an "optical illusion" created in part by the chattahoochee coating. He testified that the presence and location of each step was "not readily apparent" and that the steps were "not in a safe condition." It was his opinion "that it would not be unlikely for any human traveling down this passage way to be at risk of injury."
Mrs. Kauffman testified that in the seventeen years she and her family had lived in the house, no one had ever fallen on the front steps or complained about them. Glanzberg's daughter testified that a couple of months prior to the open house, her real estate partner tripped on the front steps, but Mrs. Kauffman did not remember this incident and the partner denied this incident occurred.
To rebut the defendants' contention that no one but Glanzberg would have fallen on this step because no one else had ever fallen there, and to help prove the front step was a dangerous condition, Glanzberg sought to introduce the testimony of Robert Gren, who bought the Kauffmans' home approximately seven months after *254 Glanzberg's fall. According to Gren's proffered testimony, the chattahoochee step was in the same condition at the time of the fall as it was when he bought the home. He stated he tripped on the front step "a couple of times" while moving into his new home until he "realized that the step was there and anticipated it." He also saw his wife trip over the step "once or twice." He stated that the step was "easy to stumble on" and that he and his family would warn visitors about it. The trial court did not allow this testimony into evidence because it believed the jury had other ample evidence from which to determine whether the chattahoochee step was a dangerous condition.
Glanzberg appeals this ruling, arguing that the evidence of subsequent incidents was admissible as further proof of a dangerous condition. Under the circumstances of this case, we agree.
The existence of multiple floor levels is not itself a dangerous condition. See Casby v. Flint, 520 So.2d 281, 282 (Fla.1988). Even when obscured by common conditions such as dim lighting or overcrowdedness, multiple floor levels is not transformed into a dangerous condition. See id. A plaintiff, however, can prove a dangerous condition by showing an uncommon design or mode of construction creates a hidden danger that a prudent invitee would not anticipate. See id. (citing Kupperman v. Levine, 462 So.2d 90 (Fla. 4th DCA 1985), and Northwest Fla. Crippled Children's Ass'n v. Harigel, 479 So.2d 831 (Fla. 1st DCA 1985)).
Here, the expert testified that the presence and location of each step was "not readily apparent" and that the steps were "not in a safe condition." He testified that the chattahoochee steps were constructed in such a way it was "highly likely that eventually someone would fall... particularly someone that was not familiar with it." Thus, Glanzberg had proof of a dangerous condition by showing an uncommon design or mode of construction created a hidden danger that a prudent invitee would not anticipate. See Casby, 520 So.2d at 282.
To further prove dangerous condition, Glanzberg sought to introduce evidence of subsequent trips on the step. Sometimes quoted for the admissibility of subsequent similar incidents is Chambers v. Loftin, 67 So.2d 220 (Fla.1953). In Chambers, the Florida Supreme Court stated, "It is well settled that evidence of prior or subsequent similar accidents at or near the same place are admissible if they are not too remote in time, for the purpose of showing the dangerous character of the place and defendants' knowledge thereof." Id. at 222. This language appears vulnerable to misunderstanding, in that one might hastily paraphrase it for the proposition that subsequent similar incidents can be admissible to prove both dangerous condition and prior notice. It is important to note, however, that the Florida Supreme Court made this statement in the context of an issue regarding whether defendants with prior knowledge of a dangerous condition had a duty to warn the plaintiff. We agree with Glanzberg's contention that logically, evidence of subsequent similar incidents cannot be probative of any prior knowledge on the defendant's part. That is generally understood in case law. See, e.g., Bass v. Cincinnati, Inc., 180 Ill.App.3d 1076, 129 Ill.Dec. 781, 536 N.E.2d 831 (1983); Reingold v. Wet `N Wild Nev., Inc., 113 Nev. 967, 944 P.2d 800 (1997); Klatz v. Armor Elevator Co., 93 A.D.2d 633, 462 N.Y.S.2d 677 (1983). If, however, the subsequent similar incidents are not too remote in time, then they are admissible as additional proof of dangerous condition.
Here, the subsequent similar fall over the step was not too remote in time. In *255 light of the other evidence that the chattahoochee step was a dangerous condition, the evidence of subsequent similar incidents should have been admitted into evidence for the jury's consideration as it, too, was probative of whether the step was a dangerous condition. The trial court abused its discretion in excluding it. See Chambers, 67 So.2d at 220, cited in Wood v. Walt Disney World Co., 396 So.2d 769 (Fla. 4th DCA 1981).
Glanzberg also challenges the trial court's exclusion of subsequent remedial measure evidence. Evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. See § 90.407, Fla. Stat. (1997) (amended in 1999). Glanzberg argues she should have been allowed to introduce evidence of subsequent remedial measures to show dangerous condition. Because dangerous condition is an element of negligence in this case, we cannot escape the conclusion that the evidence Glanzberg sought to admit was offered for a purpose prohibited under section 90.407. See Thursby v. Reynolds Metals Co., 466 So.2d 245 (Fla. 1st DCA 1984). Because the trial court adhered to the Florida Evidence Code, we find no abuse of discretion.
In sum, the trial court abused its discretion in excluding evidence of subsequent similar incidents that were not too remote in time, but did not abuse its discretion in excluding evidence of subsequent remedial measures. Accordingly, we reverse and remand for a new trial against the Kauffmans.
REVERSED AND REMANDED FOR A NEW TRIAL.
WARNER, C.J., and DELL, J., concur.